Sam C. BASHARA, Petitioner,

v.

BAPTIST MEMORIAL HOSPITAL
SYSTEM, Respondent.

No. C–3187.

Supreme Court of Texas.

Feb. 6, 1985.

San C. Bashara, San Antonio, for petitioner.

Ertel & Prashner, E.S. Prashner, San Antonio, for respondent.

ROBERTSON, Justice.

This case involves a quantum meruit claim for attorneys' fees from the sum recovered and allocated to payment of a hospital lien. Tex.Prop.Code Ann. ch. 55 (Vernon 1983).

Kelley F. Axtell was involved in an automobile accident with Jody Maxwell Toombs. Axtell retained petitioner, Sam C. Bashara, an attorney, whose efforts resulted in a settlement agreement with Toomb's insurance carrier, Texas Farmers Insurance Company, for the policy limit of $50,000.

While suit was pending, and before the settlement was reached, respondent, Baptist Memorial Hospital System, filed a hospital lien for charges incurred in treating Axtell's injuries. Farmers issued two drafts in payment of the total amount of the settlement. One draft was for $34,789.55, payable to Axtell and Bashara. The other draft was for $15,210.45, the amount of the hospital lien, made payable to Axtell, Bashara and Baptist Hospital.

A dispute arose over distribution of the proceeds of the latter draft. Attorney Bashara claimed a share of the proceeds; Baptist Hospital refused to recognize the claim and filed the instant suit against Farmers. Axtell and Bashara intervened, respectively seeking a reduction in the overall amount of the lien and quantum meruit attorneys' fees for creating the fund of money from which Baptist Hospital recovered. Farmers filed a bill of interpleader, and requested its own attorneys' fees in the action.

The trial court awarded $2,885.00 to Axtell, as a reduction in the amount of the hospital lien, $750.00 to Farmers' attorney as fees for filing the interpleader, $7,720.83 to Baptist Hospital, and $3,854.62 to Bashara as a quantum meruit recovery from Baptist Hospital's lien payment, for services rendered in effecting the original settlement of Axtell's cause of action.

Baptist Hospital appealed, limiting its appeal to that portion of the judgment rendered against it for Bashara's attorneys' fees. Tex.R.Civ.P. 353. The court of appeals reversed and rendered, holding that conflict of interest problems precluded recovery of attorneys' fees from Baptist Hospital. 685 S.W.2d 352.

This is a case of first impression in Texas, presenting the question whether a plaintiff's attorney can enforce a quantum meruit claim against a health care provider, thereby reducing the amount otherwise recoverable by virtue of a hospital lien. We hold that such a claim is precluded as a matter of law, and thus affirm the decision of the court of appeals.

Attorney Bashara suggests that Baptist Hospital actively obstructed the progress of the suit, providing inaccurate information and charging excessively for copies of the hospital records. We note the provision in the hospital lien statute that "[o]n request ... a hospital shall as promptly as possible make available for the attorney's examination its records concerning the services provided to the injured individual," subject only to "reasonable rules" as the hospital shall prescribe. Tex.Prop.Code Ann. § 55.008(a) and (b) (Vernon 1983). No point of error, or written or oral argument of parties, however, has been directed to the question of whether lack of cooperation can result in a waiver of the lien, and we decline to decide the point in this cause. Tex.R.Civ.P. 469.

We are also not called upon to decide, nor do we decide, what the result would be

in a case where the plaintiff's recovery is insufficient to pay both his contractual obligation to his attorney and his debt to the hospital for medical services rendered. *See generally* Note, *Hospital Liens,* 20 Baylor L.Rev. 365, 369–370 (1968). It is undisputed that the recovery in the instant case is more than sufficient to discharge fully both the plaintiff's obligation to his attorney and his debt to Baptist Hospital. The issue here is simply whether Baptist Hospital should be required to shoulder a part of plaintiff's lawyer's charges for services rendered to his client.

The purpose of a hospital lien statute is to provide hospitals an additional method of securing payment for medical services, thus encouraging the prompt and adequate treatment of accident victims.

> "The legislature's intent in passing the statute was to provide for payment to the hospital.... Giving the hospital a separate cause of action to satisfy its lien insures that an accident victim will receive aid and that the hospital will be reimbursed for its services, thus reducing hospital costs."

*Baylor Univ. Med. Center v. Borders,* 581 S.W.2d 731, 733 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). The 1933 act creating hospital liens stated that "the hospitals of the State of Texas are losing vast sums of money which amounts to the taking of property without compensation therefor." *Baylor Univ. Med. Center v. Travelers Ins. Co.,* 587 S.W.2d 501, 504 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.); *see also* Comment, *Liens—The New York Hospital Lien Law,* 37 Colum.L.Rev. 1036, 1036 (1937) (characterizing Texas' law as "an attempt to alleviate the financial burdens on hospitals caused by the increase of non-paying accident cases in the past few years").

■ Although the statute does not specifically address the situation presented in this case, it is replete with language that the hospital recover the full amount of its lien, subject only to the right to question the reasonableness of the charges comprising the lien. The statute states that "[t]he lien is for the amount of the hospital's charges for services provided to the injured individual...." Tex.Prop.Code Ann. § 55.002 (Vernon 1983). In the context of this case, it is particularly interesting to observe the statutory provision that "[a] release of a cause of action or judgment to which the lien may attach is not valid unless ... the hospital's charges were *paid in full,*" among other alternatives. Tex. Prop.Code Ann. § 55.007 (Vernon 1983) (emphasis added). Thus, while not conclusive, the language and intent of the statute militate strongly against permitting recovery of a patient's attorney's fees from the corpus of the hospital lien.

Although this is a novel question in Texas, highly similar claims have been advanced in a number of other states with hospital lien statutes. While no such cases were cited in briefs of parties or in oral argument, this court cannot help but note an apparent unanimity of opinion on the subject. Beginning with the Supreme Court of Montana in *Sisters of Charity of Providence of Montana v. Nichols,* 157 Mont. 106, 483 P.2d 279 (1971), a succession of recent decisions by unanimous courts have rejected claims by plaintiffs' attorneys to compensation from the corpus of a hospital lien. *See, e.g., Crowder v. Dade County,* 415 So.2d 732 (Fla.App.1982) (per curiam); *Maynard v. Parker,* 75 Ill.2d 73, 25 Ill.Dec. 642, 387 N.E.2d 298 (1979); *Broadlawns Polk County Hospital v. Estate of Major,* 271 N.W.2d 714 (Iowa 1978); *Hillcrest Med. Center v. Fleming,* 643 P.2d 868 (Okla.Ct.App.1982); *see also generally* Annot., 25 A.L.R.3d 858 (1969). While these decisions are not controlling on this court, they have addressed virtually every argument made by attorney Bashara in this appeal, and thus deserve careful consideration.

Petitioner relies on three arguments to support his claim for attorneys' fees: the theory of quantum meruit, the "common fund" doctrine, and an analogy to third party actions under workers' compensation statutes. These will be discussed in turn.

The most appealing argument, and one found persuasive by the trial court, is that attorney Bashara has presented a quantum meruit claim against Baptist Hospital. This theory of recovery is founded in the principle of unjust enrichment. The elements of a quantum meruit claim include proof that:

"1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged."

*City of Ingleside v. Stewart*, 554 S.W.2d 939 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.) (citations omitted). At first blush, the quantum meruit approach has some appeal. Mr. Bashara's efforts certainly benefited Baptist Hospital, in that he brought about the settlement with Farmers, the proceeds of which were used to discharge the lien. Had the hospital retained Bashara to collect its debt from Axtell, Bashara would undoubtedly be entitled to compensation.

It is not enough to show that attorney Bashara's efforts benefited Baptist Hospital, however. Those efforts must have been undertaken *"for* the person sought to be charged." *City of Ingleside*, 554 S.W.2d at 943. It is well settled that "[n]o one can legally claim compensation for ... incidental benefits and advantages to one, flowing to him on account of services rendered to another by whom the attorney may have been employed." *Landman v. State*, 97 S.W.2d 264, 265 (Tex.Civ.App. —El Paso 1936, writ ref'd).

Although Baptist Hospital may well have received benefits traceable to Bashara's efforts on Kelley Axtell's behalf, those benefits are only incidental, and create no claim for compensation. The point was explained succinctly by the Supreme Court of Montana:

"The attorneys here simply performed the services they were obligated to perform under their employment contract with their client, the accident victim. The client received the benefit of her attorneys' services in the form of accident settlement proceeds from which she could pay the hospital bill she owed to the hospital and discharge its lien. The fact that an incidental benefit was also received by the hospital from her attorneys' services in the form of settlement proceeds from which its bill could be paid does not, in itself, create an implied contract by the hospital to pay her attorneys for their services."

*Sisters of Charity*, 483 P.2d at 283; *accord Broadlawns Polk County Hospital v. Estate of Major*, 271 N.W.2d 714, 716 (Iowa 1978).

Petitioner Bashara also urges application of the "common fund" doctrine, as exemplified by this court's decision in *Knebel v. Capital Nat'l Bank in Austin*, 518 S.W.2d 795 (Tex.1974). The doctrine is in many ways similar to quantum meruit, and the arguments just discussed are equally persuasive on this point. It has been observed that

"This rule rests upon the ground that where one litigant has borne the burden and expense of the litigation that has inured to the benefit of others as well as to himself, those who have shared in the benefits should contribute to the expense."

Annot., 49 A.L.R. 1149, 1152 (1927). While Baptist Hospital has "benefited" in a sense from Bashara's creation of the settlement fund, the hospital's lien is not co-equal with the injured plaintiff's claim of right to the settlement proceeds, but results from the debtor-creditor relationship between the two.

We agree with a number of other courts that there is no reason to expand the "common fund" doctrine to this situation.

"[T]he benefit to the hospital resulting from [the attorney's] services was merely incidental to the primary purpose of obtaining compensation for plaintiff's injuries.... We cannot justify extending the common fund doctrine to require a mortgagee or a furniture store or any other creditor of a plaintiff to contribute to the fees of the plaintiff's attorney if the funds recovered by litigation are used to satisfy the plaintiff's obligations."

*Maynard v. Parker*, 54 Ill.App.3d 141, 11 Ill.Dec. 898, 901, 369 N.E.2d 352, 355 (1977), *aff'd*, 755 Ill.2d 73, 25 Ill.Dec. 642, 387 N.E.2d 298 (1979); *see also Wheaton v. Department of Public Aid*, 92 Ill.App.3d 1084, 48 Ill.Dec. 507, 416 N.E.2d 780 (1981); Dawson, *Lawyers and Involuntary Clients: Attorney Fees From Funds*, 87 Harv.L.Rev. 1597 (1974) (generally disapproving the doctrine).

■ Petitioner's final argument is an analogy to Tex.Rev.Civ.Stat.Ann. art. 8307 § 6a (Vernon 1967), whereby a subrogated workers' compensation carrier may be required to bear part of the costs of prosecuting the injured worker's suit. The analogy is inapt. While attorneys' fees in a workers' compensation setting are mandated by statute, the language and intent of the statute at issue here, as discussed earlier, is to the contrary. In addition, while the insurance carrier's recovery in a workers' compensation case is based on subrogation principles, whereby the carrier "stands in the shoes" of the employee, with no greater rights than the employee himself has, the hospital's rights are based on the independent debtor-creditor relationship. Either distinction is sufficient; both have been found persuasive by other courts. *See, e.g., Broadlawns Polk County Hospital v. Estate of Major*, 271 N.W.2d 714, 716 (Iowa 1978); *Sisters of Charity of Providence of Montana v. Nichols*, 157 Mont. 106, 483 P.2d 279, 283 (1971).

The decision of the court of appeals is affirmed.