**BRAND, Banking Com'r, v. DENSON et al.**
**No. 8223.**

Court of Civil Appeals of Texas. Austin.

Jan. 30, 1935.

Supplemental Opinion Feb. 13, 1935.

Rehearing Denied Feb. 20, 1935.

Judge Ocie Speer, of Austin, for appellant.

J. K. Freeman, B. P. Matocha, and M. G. Cox, all of Cameron, and C. G. Krueger, of Austin, for appellees.

BLAIR, Justice.

This litigation arose as follows:

In the liquidation of the insolvent Cameron State Bank, the commissioner sought to apply the chancery rule as to Milam county, a secured creditor, whereupon appellees, some 40 unsecured creditors, for themselves and about 1,900 creditors similarly situated, instituted proceedings to restrain him from applying said rule, contending that he should apply the bankruptcy rule, which contention was sustained by this court, and a writ of error was refused by the Supreme Court. Denson v. Shaw (Tex. Civ. App.) 62 S.W.(2d) 344. Thus appellees, through their attorneys, saved for themselves and all other creditors of the same class about $22,000. When the cause was remanded, the trial court ordered the commissioner to apply the bankruptcy

rule. Appellees then amended their pleadings, seeking to recover one-half of the amount saved as reasonable attorney's fees for the successful prosecution of the suit, the attorneys making themselves parties plaintiff; and judgment was rendered as prayed.

The commissioner brings the appeal, contending that the suit was not a class suit, as that term is used and understood, because the recovery did not increase the assets in the hands of the commissioner, and did not bring into his hands any assets that were not already there; but that, to the contrary, the suit was to direct and compel him to apply the bankruptcy rule with respect to the distribution of the assets or fund already in his possession.

■ The rule contended for by the commissioner is too limited. In the language of the authorities, a court of equity will allow reasonable attorney's fees to a complainant who at his own expense has maintained a successful suit or proceeding for the preservation, protection, or increase of a common fund. Courts have not only allowed counsel fees to one who discovers or creates a fund which inures to the benefit of all persons of the same class, but such fees have been allowed where the services of counsel have preserved a fund to be shared by those having like interest, and unrepresented by counsel. McCormick v. Elsea, 107 Va. 472, 59 S. E. 411; 49 A. L. R. 1150-1169, note. It has also been held that an attorney who has succeeded in bringing into court for distribution among unsecured creditors funds which otherwise would have gone in payment of those holding, with the approval of the trustee, unlawful preferences, may be accorded from the fund salvaged compensation for their legal services, under the rule that one having an interest in a common fund, who increases or protects it, is entitled to an allowance of attorney's fees. 3 R. C. L. (P. S.) 2078, § 23a; 49 A. L. R. 1169, note. Furthermore, "where in proceedings in equity a fund is brought into court for division among the parties * * * by the efforts of counsel a proper disposition is made thereof, and different from what it would have been without such efforts, that reasonable counsel fees may be allowed from the fund." Ohio Nat. Bank v. Cummings & Co., 21 Ohio Cir. Ct. R. 782. The rule is founded upon the principle that one who preserves or protects a common fund works for others as well as for himself, and the others so benefited should bear their just share of the expenses, including a reasonable attorney's fee; and that the most equitable way of securing such contribution is to make such expenses a charge on the fund so protected or recovered. The authorities also hold that in a broad sense any fund against which an allowance for attorney's fees may be charged, on the theory that all interested have benefited by the services, is a trust fund, and comes under the rule that, "when many persons have a common interest in a trust property or fund, and one of them, for the benefit of all and at his own cost and expense, brings a suit for its preservation or administration, the court of equity in which the suit is brought will order that the plaintiff be reimbursed his outlay from the property of the trust, or by proportional contribution from those who accept the benefits of his efforts." 49 A. L. R. 1170, 1171; Davis v. Bay State League, 158 Mass. 434, 33 N. E. 591; Thurber Construction Co. v. Kemplin, 80 S.W.(2d) 103, by this court.

■ In the instant case the undisputed evidence showed that the commissioner would have applied the chancery rule as to Milam county, a secured creditor, thereby allowing it a preference over the unsecured creditors of the insolvent bank, if it had not been for the efforts of counsel in bringing this proceeding. He denied their written protest and refused their request to apply the bankruptcy rule to the secured creditor, or those represented by it. He refused their request to institute proceedings wherein the question might be determined, thereby compelling appellees to bring this proceeding for themselves and all other unsecured creditors and contested their claim through all the courts. These facts distinguish the instant case from the case of Strang v. Taylor, 82 Ala. 213, 2 So. 760, relied upon by appellant, and wherein it was shown that the trustee of the fund was not himself attempting to administer and distribute the fund, but requested the court of equity in which the proceedings were brought to direct him as to how the claims in respect to priorities should be distributed.

The commissioner correctly contends that the counsel fees allowed are unreasonable and excessive; that is, the counsel fees of one-half the fund saved for the unsecured creditors, or more than $10,000, are excessive.

■ In equitable proceedings of this character, "the court should be cautious not to award excessive or improper allowances, whereby just criticism may be provoked; the allowance should be confined within the limits of the resultant benefits ensuing equally to all having a common interest, and of which all must necessarily avail themselves." 49 A. L. R. 1153, 1154, note; Strang v. Taylor,

supra. The amount of such fees is not fixed by contract, but is measured by the reasonable value of the services rendered. "The circumstances to be considered in determining the compensation to be recovered are the amount and character of the services rendered; the labor, time, and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount of money or the value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance of the services; the professional character and standing of the attorney; the results secured; and whether or not the fee is absolute or contingent, it being a recognized rule that an attorney may properly charge a much larger fee when it is to be contingent than when it is not." 6 C. J. 750–752; Texon Oil & Land Co. v. Hanszen (Tex. Civ. App.) 292 S. W. 563.

The counsel fees allowed in the instant case were not contingent in the sense that the claims of the unsecured creditors were unliquidated. The approximate amount of the trust fund was known and the amount of each creditor's claim was known and allowed. The matter to be determined was the rule of distribution as between secured and unsecured creditors of the trust fund. While this question required legal learning, skill, and ability, it was not an extremely difficult one, because the decision required the adoption of one or the other of two well-settled rules of distribution of the trust fund, or the assets of the insolvent bank. It is true that by bringing the class suit appellees dispensed with the matter of serving about 1,900 unsecured creditors similarly situated with citation, thus effecting a saving of probably $4,000, for the issuance and service of such citations. The record also showed that the claims of the unsecured creditors ranged from a few cents to several thousand dollars, justifying the class suit; but requiring the court to be cautious not to award such attorney's fees as might provoke the criticism of the uncited unsecured claimants, who had already lost heavily in the bank failure. Having reviewed the rules, and from our own knowledge of the matter of attorney's fees, we have concluded that an attorney's fee of more than $5,000 would be excessive, and that the counsel fees should be allowed in a lump sum out of the fund saved; the balance to be distributed pro rata to the unsecured creditors. We therefore suggest that, if appellees would file a remittitur of all attorney's fees in excess of $5,000 within fifteen days, the judgment of the trial court will be reformed and affirmed so as to allow judgment for not exceeding $5,000 as attorney's fees, to be paid in a lump sum out of the fund saved to the unsecured creditors; the balance of said fund to be calculated and paid pro rata to the unsecured creditors by the commissioner; otherwise the judgment will be reversed and remanded.

Judgment reformed and affirmed, if remittitur filed; otherwise reversed and remanded.

McCLENDON, C. J., not sitting.

#### Supplemental Opinion.

BLAIR, Justice.

In accordance with the suggestion made in our original opinion, appellees have filed a remittitur of all claims for attorney's fees in excess of the sum of $5,000. Accordingly, the judgment of the trial court will be reformed so as to render judgment for appellees for $5,000 attorney's fees, same to be paid in a lump sum out of the amount or fund saved to the unsecured creditors; the balance of said fund to be paid pro rata to such unsecured creditors by the commissioner; and as thus reformed the judgment of the trial court will be affirmed.

Affirmed.