**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

Nos. 96-21155 and 97-20424
(Summary Calendar)
_____

EDDIE G. HINTON, and all others
similarly situated,

Plaintiff-Appellant,

versus

FEDERAL NATIONAL MORTGAGE
ASSOCIATION and MAGNOLIA
FEDERAL BANK FOR SAVINGS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
(96-CV-2070)
_____

February 11, 1998

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

In 96-21155, Plaintiff-Appellant Eddie G. Hinton, on behalf of himself and others similarly situated,[1] appeals the district court's grant of Defendants-Appellees Federal National Mortgage Association (FNMA) and Magnolia Federal Bank for Savings'

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]A class was never certified in this action.

(Magnolia) motion to dismiss. Hinton, a homeowner, sued FNMA, the current holder of his mortgage, and Magnolia, FNMA's contract service agent, in state court, alleging that they required him to pay for private mortgage insurance when he was no longer obligated to maintain such insurance. The suit was subsequently removed to federal district court. Although Hinton's mortgage documents provide that he will pay for private mortgage insurance for the life of his loan, he claims that he should have been relieved of that obligation for two reasons. He first contends that he is a third party beneficiary of the service contract between FNMA and Magnolia, and is therefore entitled to invoke an FNMA policy — contained only in its internal guidelines — that, upon request from a borrower, a servicer must cancel mortgage insurance if the current loan-to-original value ratio falls to 80 percent or less. Second, Hinton argues that FNMA and Magnolia breached their fiduciary duties to him by not disclosing that he could cancel his private mortgage insurance when he acquired the specified level of equity in his home. He seeks, inter alia, (1) an injunction requiring that notice be issued to all borrowers regarding their right to cancel their private mortgage insurance when they meet the appropriate equity level, and (2) the automatic cancellation of the private mortgage insurance of any putative class members who have attained the required equity levels.

Following careful review of the record, the arguments of counsel, the district court's opinion, and the applicable Texas

2

law, we reach the same conclusions as did the district court for the same reasons espoused by that court.  As the district court's opinion provides a comprehensive, well-reasoned analysis of these issues,[2] we adopt that court's opinion as our own and incorporate it by reference herein, affirming the district court's dismissal of Hinton's suit.

In the appeal consolidated herewith, 97-20424, Hinton asserts that his counsel is entitled to attorney's fees under the "common fund" doctrine.  Having learned from post-litigation press releases that FNMA was considering amending its policy on private mortgage insurance, Hinton's counsel demanded that they receive 25 percent of any refunds made to mortgagors if FNMA does change its guidelines to make them more favorable to mortgagors. The district court denied the requested fees.  We review that decision for abuse of discretion.[3]

Although attorney's fees are traditionally not awarded in the absence of statutory or contractual authorization,[4] Texas courts have adopted the so-called common fund exception to that rule.  As

---

[2]Hinton v. Federal Mortgage Assoc., 945 F. Supp. 1052 (S.D. Tex. 1996).

[3]DSC Communications Corp. v. Next Level Communications, 107 F.3d 322, 330 (5th Cir. 1997); Forbush v. J.C. Penney Co., 98 F.3d 817, 821 (5th Cir. 1996).

[4]Knebel v. Capital Nat'l Bank in Austin, 518 S.W.2d 795, 799 (Tex. 1974) (citing Hall v. Cole, 412 U.S. 1 (1973)); Texas Farmers Ins. Co. v. Seals, 948 S.W.2d 532, 533 n.1 (Tex. App. — Fort Worth 1997, no writ); Lancer Corp. v. Murillo, 909 S.W.2d 122, 126 (Tex. App. — San Antonio 1995, no writ).

explained in <u>Knebel v. Capital National Bank in Austin</u>:

> [A] court of equity will allow reasonable attorney's fees to a complainant who at his own expense has maintained a successful suit or proceeding for the preservation, protection, or increase of a common fund. . . . The rule is founded upon the principle that one who preserves or protects a common fund works for others as well as for himself, and the others so benefited should bear their just share of the expenses, including a reasonable attorney's fee; and that the most equitable way of securing such contribution is to make such expenses a charge on the fund so protected or recovered.[5]

"Although the common fund doctrine has been infrequently asserted in Texas, the courts have applied it to class actions, shareholder derivative suits, and insurance subrogation."[6]

The district court ruled that the common fund doctrine was inapplicable in this case. It reasoned that the doctrine "applies only to counsel who prevail and create a specific monetary fund under the control of the court." Here, Hinton did not prevail; in fact, he did not even survive a motion to dismiss.[7] Furthermore, there is no fund over which the court has control.[8] Finally, the

---

[5]<u>Knebel</u>, 518 S.W.2d at 799 (quoting <u>Brand v. Denson</u>, 81 S.W.2d 111, 112 (Tex. Civ. App. 1935, writ dism'd)).

[6]<u>Lancer Corp.</u>, 909 S.W.2d at 126 (internal citations omitted).

[7]<u>See</u> <u>Wolf v. General Motors</u>, 569 F.2d 1266, 1268 (3d Cir. 1978) ("Not the least of appellants' problems is that the merits of this litigation ended in dismissal of the complaints.").

[8]<u>See, e.g.</u>, <u>State ex rel. Poulos v. State Bd. of Equalization for the State of Oklahoma</u>, 646 P.2d 1269, 1275 (Okla. 1982) ("[T]here is no creation of a common fund as a result of the litigation which is under the control of this Court . . . ."); <u>Hamer v. Kirk</u>, 356 N.E.2d 524, 527 (Ill. 1976) ("Since no fund had been placed under control of the court in the instant case, the trial court was without authority to award attorney's fees to the

district court specifically noted in its opinion in the underlying case that FNMA had the power to change its policy unilaterally. In sum, the court concluded that "Hinton may have succeeded in causing a change of policy, but he did not do it by succeeding in this case." Considering all these factors, we perceive no abuse of discretion in the district court's ruling. Accordingly, the judgment of the district court is, in all respects,

AFFIRMED.

petitioner.").

5