Opinion filed July 13, 2006

















 
 
  
 
 







 
 
  
 
 




Opinion filed July 13, 2006

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00259-CV 

                                                    __________

 

        STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,        Appellant

 

                                                             V.

 

 SHANNON
PERKINS INDIVIDUALLY AND AS NEXT FRIEND FOR JOANNA MAGEE, JOSHUA MAGEE AND
CHRISTIAN BLAIR, Appellee

 



 

                                          On
Appeal from the 35th District Court

 

                                                          Brown County, Texas

 

                                             Trial
Court Cause No. CV03-06-198

 



 

                                                                   O
P I N I O N

State Farm Mutual Automobile Insurance Company
appeals from the trial court=s
order striking its plea in intervention. 
We reverse and remand this cause to the trial court for further
proceedings.

                                                               Background
Facts








Shannon Perkins was involved in an automobile
accident with Eddie Mike Cooper Jr. on May 22, 2003.  Perkins and her minor children were injured
in the accident.  At the time of the
accident, Cooper was driving a dump truck owned by Harold Oaks.  Perkins had an automobile insurance policy
with appellant, State Farm Mutual Automobile Insurance Company.  Cooper did not have automobile liability
insurance.  As a result of the accident,
State Farm paid $25,000 in uninsured/underinsured motorist benefits (UM
benefits) to Perkins for her injuries under the terms of her policy.  

Perkins, individually and as next friend of her
minor children, filed a negligence suit against Cooper and Oaks for personal
injury damages arising from the accident. 
She alleged that Cooper was extremely intoxicated and driving in the
wrong lane of traffic at the time of the accident.  Perkins further alleged that Oaks had been
negligent in failing to take steps to prevent Cooper from driving the dump
truck.  Perkins was unable to obtain
service on Cooper, and her case proceeded against Oaks.  Oaks had an automobile liability insurance
policy with State Farm.

State Farm intervened in the suit seeking
reimbursement for the UM benefits that it had paid to Perkins under her
policy.  In response, Perkins filed a
motion to strike State Farm=s
subrogation claim.  In the motion, Perkins
asserted that State Farm could not proceed against its own insured, Oaks, in a
subrogation action.  With the agreement
of Perkins and State Farm, the trial court delayed consideration of State Farm=s intervention until after the trial of
Perkins=s case
against Oaks.

At the trial, the jury found that Oaks was
negligent and awarded Perkins $53,000 in personal injury damages.  The jury awarded a total of $1,100 in damages
to Perkins=s minor
children.  The trial court rendered
judgment in accordance with the jury verdict. Oaks=s
policy covered the judgment amount. 
State Farm=s
subrogation claim involved the UM payment that it had made to Perkins
individually for her injuries.  The
subrogation claim did not involve payments that State Farm had made to Perkins=s minor children under the terms of
Perkins=s
policy.  The trial court ordered State
Farm to pay $25,000 of the proceeds of the judgment amount into the registry of
the court pending determination of State Farm=s
subrogation claim. 








The trial court held a hearing on Perkins=s motion to strike State Farm=s subrogation claim.  On October 4, 2004, the trial court signed an
order striking State Farm=s
claim for subrogation.  In the order, the
trial court did not specifically state that it had ruled on the merits of State
Farm=s
subrogation claim, as opposed to ruling only on the procedural requirements for
intervention.  However, the trial court
did state that it intended the order to represent a final order as to all
matters regarding State Farm=s
request for subrogation against Oaks. 
State Farm challenges the trial court=s
order in this appeal.

                                                                 Issues
on Appeal

State Farm presents two issues for review.  In its first issue, State Farm argues that
the trial court abused its discretion in striking its intervention.  In its second issue, State Farm asserts that
the trial court erred in determining that it was not entitled to subrogation or
reimbursement for the benefits paid to Perkins under her UM coverage from the
proceeds paid under Oaks=s
policy. 

                                                              Standard
of Review

Rule 60 of the Texas Rules of Civil Procedure
provides that A[a]ny
party may intervene by filing a pleading, subject to being stricken out by the
court for sufficient cause on the motion of any party.@  Tex.
R. Civ. P. 60.  We review a trial
court=s ruling
striking an intervention under an abuse of discretion standard.  Guaranty Fed. Sav. Bank v. Horseshoe
Operating Co., 793 S.W.2d 652, 657 (Tex. 1990); Nat=l Union Fire Ins. Co. of Pittsburgh,
Pa. v. Pennzoil Co., 866 S.W.2d 248, 251 (Tex. App.CCorpus
Christi 1993, no writ).  A trial court
abuses its discretion in striking the plea in intervention when (1) the
intervenor establishes that it could have brought suit in its own right, (2)
the intervention will not complicate the case by an excessive multiplication of
the issues, and (3) the intervention is almost essential to effectively protect
the intervenor=s
interest.  Guaranty Fed., 793
S.W.2d at 657; Caprock Inv. Corp. v. Fed. Dep. Ins. Corp., 17 S.W.3d
707, 710-11 (Tex. App.CEastland
2000, pet. denied).

State Farm asserts that its intervention met the
three elements required for showing an abuse of discretion.  First, State Farm contends that it had
contractual and statutory rights of subrogation for the UM benefits paid to
Perkins under her policy and that, therefore, it could have brought suit in its
own right.  Second, State Farm contends
that its intervention did not unduly complicate the case.  Third, State Farm contends that, in the
absence of its intervention, it would have been required to pay the judgment in
full to Perkins prior to the determination of its subrogation rights.  Thus, State Farm argues that the intervention
was necessary to preserve its subrogation rights.  See Duke v. Wilson, 900 S.W.2d 881,
886 (Tex. App.CEl Paso
1995, writ denied) (intervention was necessary to prevent payment of a judgment
in full to a plaintiff in a third party case prior to insurance carrier=s recoupment of its subrogation
interest).








Perkins asserts that the trial court did not abuse
its discretion in striking State Farm=s
intervention.  Perkins argues that an
insurance company may not recover against its own insured in a subrogation
action and that, therefore, State Farm has no right of subrogation against its
insured, Oaks.  Perkins also argues that
the trial court may have concluded that the Amade
whole@ and Acommon fund@
doctrines precluded any recovery by State Farm.

Subrogation and Reimbursement Issues

We first decide whether an insurer that has paid
UM benefits to an insured under one policy may seek subrogation or
reimbursement for the payment of those benefits from another of its insureds
under a different policy.  The Texas courts have not
addressed this issue.  Subrogation is the
right of one who has paid an obligation which another should have paid to be
indemnified by the other.  Employers
Cas. Co. v. Dyess, 957 S.W.2d 884, 886 (Tex. App.CAmarillo
1997, pet. denied) (citing Black=s Law
Dictionary 1427 (6th ed.
1990)).  There are three types of
subrogation rights recognized in Texas:
(1) equitable, or legal, subrogation; (2) contractual subrogation; and (3)
statutory subrogation.  See Tex Ass=n of School Boards, Inc. v. Ward,
18 S.W.3d 256, 258 (Tex. App.CWaco
2000, pet. denied).  

In this case, State Farm asserts that it has
contractual and statutory rights of subrogation for the UM benefits paid to
Perkins under her policy.  State Farm
also asserts that it has a right to reimbursement for the UM payments under the
terms of Perkins=s
policy.  Perkins=s
policy contained the following provisions:

OUR RIGHT TO RECOVER PAYMENT

A.  If we make a payment under this policy and
the person to or for whom payment was made has a right to recover damages from
another we shall be subrogated to that right.

. . . .

 

B.
 If we make a payment under this policy
and the person to or for whom payment is made recovers damages from another,
that person shall:

  

1.  Hold in trust for us the proceeds of the
recovery; and

2.  Reimburse us to the extent of our
payment.                             

Thus, the clear language of the policy provided State Farm with
contractual rights of subrogation and reimbursement.  








Article 5.06-1 of the Texas Insurance Code governs
uninsured and underinsured motorist coverage. 
TEX. INS. CODE ANN. art. 5.06-1 (Vernon
Supp. 2005).  Article 5.06-1(6)
provides  insurers with a statutory right
of subrogation or reimbursement for payments of uninsured and underinsured
motorist benefits:

In the event of payment to any
person under any coverage required by this Section and subject to the terms and
conditions of such coverage, the insurer making such payment shall, to the
extent thereof, be entitled to the proceeds of any settlement or judgment
resulting from the exercise of any rights of recovery of such person against
any person or organization legally responsible for the bodily injury, sickness
or disease, or death for which such payment is made.                

Under Article 5.06-1(6), State Farm has a statutory right of
subrogation or reimbursement for the UM benefits paid to Perkins.

The issue in this case is whether State Farm may
seek to enforce its subrogation and reimbursement rights against its own
insured, Oaks.  In arguing that State Farm
may not seek subrogation against Oaks, Perkins relies on cases stating the
general equitable rule that an insurer may not proceed against its own insured
in a subrogation action.  See McBroome-Bennett
Plumbing, Inc. v. Villa France, Inc., 515 S.W.2d 32, 36 (Tex. Civ. App.CDallas 1974, writ ref=d n.r.e.); see also AGIP Petroleum
Co. v. Gulf Island Fabrication, Inc., 920 F. Supp. 1318, 1326 (S.D. Tex.
1996); Stafford Metal Works, Inc. v. Cook Paint and Varnish Co., 418 F.
Supp. 56, 60 (N.D. Tex. 1976).  This
rule, also known as the antisubrogation rule, provides that an insurer has no
right of subrogation against its own insured for a claim arising from the very
same risk for which the insured was covered. 
See Nat=l
Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartford Ins. Co. of the Midwest,
248 A.2d 78, 85, 677 N.Y.S.2d 105 (N.Y. App. Div. 1998).  The antisubrogation rule is based on public
policy concerns.  Courts have explained
that permitting an insurer to sue its own insured for a liability covered by
the insurance policy would violate basic equity principles, as well as violate
sound public policy.  Stafford Metal
Works, 418 F. Supp. at 59 (citing Home Ins. Co. v. Pinski Bros.,
Inc., 500 P.2d 945, 949 (Mont.
1972)).








The Stafford Metal Works court explained
five basic reasons for the antisubrogation rule.  The first reason is purely conceptual.  It is based on the premise that an insurer
who seeks subrogation stands in the shoes of the insured and can take nothing
by subrogation but the rights of the insured. 
Because a person cannot sue himself for damages, that person=s insurer, who stands in the person=s shoes for subrogation purposes,
cannot sue the person either.  418 F.
Supp. at 58.  The second reason for the
antisubrogation rule is based on public policy grounds.  The insurer that has accepted premiums to
cover certain risks should not be allowed to pass the same risks back to its
insured in a subrogation action. 
Otherwise, the insurer would be allowed to avoid the coverage that the
insured has purchased.  Id.  The third reason for the antisubrogation
rule recognizes that the relationship between an insurer and its insured are
fraught with conflicting interests. The fourth reason for the antisubrogation
rule recognizes the possibility that, if insurers were permitted to sue their
insureds for subrogation, the insurers would be able to obtain information from
their insureds under the guise of policy provisions for later use in a
subrogation action.  The fifth reason for
the antisubrogation rule is that an insurer=s
right to sue its insured could be interpreted by the insurer as a judicial
sanction to breach the insurance policy. 
Id.

The application of the antisubrogation rule
prevents inequitable results in cases involving a single insurance policy.  An insurer who has paid a loss to its insured
under a policy should not be allowed to sue that very insured or a co-insured
under the policy to recover that same loss. 
See McBroome-Bennett Plumbing, 515 S.W.2d at 39 (court
permitted insurer of general contractor to assert a subrogation claim against a
subcontractor because the subcontractor was not an additional insured under the
general contractor=s
policy).  Otherwise, the insurer would be
permitted to avoid the insured=s
coverage under the policy by allocating the risk of the loss back to the
insured through subrogation.








This case, however, involves different insureds
and separate and distinct insurance policies. 
State Farm paid UM benefits to Perkins under her policy, and State Farm
seeks subrogation and reimbursement for those UM benefits from the proceeds
paid under Oaks=s
liability policy.  The policy concerns
behind the antisubrogation rule are not present in this case.  Permitting State Farm to seek subrogation and
reimbursement does not allow it to escape coverage under Oaks=s policy, nor does it subject Oaks to
any personal liability not covered by the policy.  State Farm already has paid the entire
judgment amount from the proceeds of Oaks=s
policy, with $25,000 of the judgment amount remaining in the registry of the
trial court.  Thus, a subrogation action
does not pass the risk of loss back to Oaks or create a conflict of interest
between State Farm and Oaks.  Further,
State Farm did nothing to breach its insurance policy with Oaks.  Perkins initiated the suit against Oaks, and
State Farm merely attempted to intervene to protect its subrogation
interests.  The antisubrogation rule
should not apply under these circumstances.

State Farm=s
recovery of subrogation or reimbursement does not allow it to avoid policy
obligations to Perkins.  By providing
uninsured/underinsured motorists coverage to Perkins, State Farm insured the
risk that Perkins would be injured by an uninsured or underinsured motor
vehicle. 

Oaks=s policy
covered the dump truck involved in the accident, and State Farm paid Perkins=s judgment against Oaks under his
policy.  Because Oaks=s policy covered the full judgment
amount, the dump truck was not an uninsured or underinsured vehicle as that
term was defined in Perkins=s
policy.[1]  Therefore, the risk covered by Perkins=s policy did not occur, and State Farm
had no obligation to pay UM benefits. 
Because the insured risk did not occur, State Farm=s recovery of subrogation or
reimbursement will not result in an avoidance of coverage under Perkins=s policy.           The
Stafford Metal Works court applied the antisubrogation rule in a case
involving different insureds with separate policies.  The insurer seeking subrogation was the fire
insurer for the plaintiff and the liability insurance carrier for the
defendant.  Based on the policy reasons
for the antisubrogation rule, the court held that the insurer could not assert
a subrogation claim against the defendant. 
Stafford Metal Works, 418
F. Supp. at 62.  This case is factually
distinguishable from Stafford Metal Works.  The conflicts of interest present in Stafford
Metal Works do not exist here. 
Additionally, in this case, State Farm has a statutory right to
subrogation.  The legislature did not
include any language in Article 5.06-1(6) suggesting that the statutory right
to subrogation does not apply when the insurer paying UM benefits also insures
the person legally responsible for the damages. 
State Farm also has a contractual right to reimbursement.  State Farm need not bring a subrogation
action against Oaks to recover under the reimbursement provision in Perkins=s policy.  The reimbursement provision requires Perkins
to hold in trust the proceeds of any recovery and reimburse State Farm to the
extent of its UM payment.








Allowing State Farm to recover subrogation or
reimbursement does not lead to inequitable results in this case.  In similar cases, courts from other
jurisdictions have permitted the insurer to pursue a subrogation claim or a
reimbursement claim.  See Benge v.
State Farm Mut. Auto. Ins. Co., 697 N.E.2d 914 (Ill. App. Ct. 1998) (court
allowed insurer to assert subrogation claim against insured under a separate
policy); Maynard v. State Farm Mut. Auto. Ins. Co., 902 P.2d 1328
(Alaska 1995) (court allowed insurer reimbursement of medical expenses paid to
insured under one policy from a different insured under a separate
policy).  Following the reasoning of
these courts, we hold that the antisubrogation rule does not bar State Farm=s rights to subrogation and
reimbursement against its insured, Oaks.

Perkins argues that the trial court did not err in
striking State Farm=s intervention
because the trial court may have concluded that the made whole and common fund
doctrines precluded any recovery by State Farm. 
In general, an insurer=s
right of subrogation may not be exercised until the insured has been made
whole.  Ortiz v. Great S. Fire and
Cas. Ins. Co., 597 S.W.2d 342, 343 (Tex.
1980); Esparza v. Scott and White Health Plan, 909 S.W.2d 548, 552 (Tex.
App.CAustin
1995, writ denied).  Under the made whole
doctrine, an insurer is not entitled to subrogation if the insured=s loss is in excess of the amounts
recovered from the insurer and the third party covering the loss.  Ortiz, 597 S.W.2d at 344; Rosa=s Café, Inc. v. Wilkerson, 183
S.W.3d 482, 488 (Tex.
App.CEastland
2005, no pet.).   








Perkins asserts that the jury award of $53,000 in
her case against Oaks did not fully compensate her for her injuries.  She claims that her injuries far exceeded the
amount of compensation awarded by the jury. 
Therefore, she asserts that the trial court could have concluded that
she was not made whole by her judgment against Oaks.  The parties have not cited, nor have we
found, any Texas cases construing Texas subrogation law in
which an insured argued that it was not made whole by a judgment.  However, courts in other states considering
the issue have held that a jury verdict constitutes a full recovery for the
purposes of the made whole doctrine.  See Tampa Port
Auth. v. M/V Duchess, 65 F. Supp. 2d 1299, 1301-02 (M.D. Fla. 1997); Bartunek
v. Geo. A. Hormel & Co., 513 N.W.2d 545, 554 (Neb. Ct. App. 1994); United
Pac. Ins. Co. v. Boyd, 661 P.2d 987, 990 (Wash. Ct. App. 1983).  These courts explained that a jury verdict on
the issue of damages determines the amount of money necessary to make an
insured whole.  When the issue of damages
has been fully litigated before a jury, an insured is collaterally estopped
from denying that he was made whole by the jury verdict.  Tampa
 Port Auth., 65
F. Supp. 2d at 1302; Bartunek, 513 N.W.2d at 554; Boyd, 661 P.2d
at 990.  Based on the sound reasoning of
these courts, we conclude that the jury=s
verdict awarding $53,000 to Perkins determined the amount of money necessary to
make Perkins whole.  The made whole
doctrine does not preclude State Farm from recovering subrogation or
reimbursement.

The object of subrogation is to prevent the
insured from receiving a double recovery. 
Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d
118, 133 (Tex. App.CHouston
[1st Dist.] 2002, pet. denied); Argonaut Ins. Co. v. Allstate Ins. Co.,
869 S.W.2d 537, 541 (Tex. App.C
Corpus Christi 1993, writ denied).  The
trial court=s judgment
awarded the amount of $53,000 in personal injury damages to Perkins.  Perkins has already received the entire
judgment amount from State Farm.  First,
State Farm paid $25,000 in UM benefits to Perkins.  Later, State Farm paid the balance of the
judgment to Perkins from the proceeds of Oaks=s
liability policy.  Pursuant to a trial
court order, State Farm deposited $25,000 into the registry of the court
pending determination of State Farm=s
subrogation claim.  If State Farm is
denied subrogation or reimbursement, Perkins will receive a double recovery of
some of her damages B
$78,000 instead of the $53,000 awarded in the judgment.

Perkins argues that, in the event State Farm
recovers subrogation, the common fund doctrine requires State Farm to share in
the attorney=s fees
and expenses that she incurred in obtaining the judgment against Oaks.  The common fund doctrine is based on the
following principle: 

[O]ne
who preserves or protects a common fund works for others as well as for
himself, and the others so benefitted should bear their just share of the
expenses, including a reasonable attorney=s
fee.

  

Knebel v. Capital Nat=l
Bank in Austin, 518 S.W.2d 795, 799 (Tex. 1974) (quoting Brand
v. Denson, 81 S.W.2d 111, 112 (Tex. Civ. App.CAustin
1935, writ dism=d)).  The common fund doctrine applies in the
context of insurance subrogation actions. 
See Tex. Farmers Ins. Co. v. Seals, 948 S.W.2d 532, 533-34 (Tex.
App.CFort
Worth 1997, no writ).  Thus, an insurer
that does not assist in the insured=s
collection of damages from a third party must pay its share of the costs and
expenses incurred in obtaining the recovery from the third party, including
attorney=s
fees.  Ortiz, 597 S.W.2d at 344; Seals,
948 S.W.2d at 532; Lancer Corp. v. Murillo, 909 S.W.2d 122, 128 (Tex.
App.CSan
Antonio 1995, no writ). 








Perkins asserts that State Farm did not assist in
obtaining or collecting her judgment against Oaks other than filing its plea in
intervention.  However, the record does
not contain any evidence indicating whether or not State Farm assisted in
obtaining the judgment.  Nor does the
record indicate that the trial court considered this issue.  In light of our holding that State Farm is
entitled to recover subrogation and reimbursement, we remand this cause to the
trial court for it to determine the issues presented by the common fund
doctrine.

                                                               This
Court=s Ruling

State Farm is entitled to receive subrogation or
reimbursement for the UM benefits it paid to Perkins under her policy from the
proceeds of Oaks=s
liability policy.  Therefore, the trial
court abused its discretion in striking State Farm=s
plea in intervention.  We sustain State
Farm=s issues.  We reverse the trial court=s order striking State Farm=s intervention and remand this cause to
the trial court for proceedings consistent with this opinion.

 

TERRY McCALL

JUSTICE

 

July 13, 2006

Panel
consists of:  Wright, C.J, and

McCall,
J., and Strange, J.











[1]We note that a certificate of coverage in the record
shows that Oaks=s policy had liability limits of $50,000 per person and
$100,000 per accident.  The $53,000 in
damages awarded to Perkins at trial exceeds the $50,000 per person limit.  However, State Farm paid the entire judgment
under Oaks=s policy, and neither party asserts that the dump truck
was underinsured under the terms of Perkins=s
policy.